Good morning, Your Honors. Matt Campbell from the Federal Defenders of Eastern Washington. I appreciate you putting up with me for a third time, but I promise I won't be back until May. What's happened in this case is both the state court, the Court of Appeals, and the district court have found a number of constitutional errors regarding confrontation, regarding some due process, or prosecutorial misconduct. However, what was striking in my review of these cases was neither the Court of Appeals nor the district court conducted any cumulative error review at all. And we've discussed both the case of Parle v. Runnels as well as Chambers v. Mississippi. And in those cases, both this court and the Supreme Court has stated that cumulative error can be found in cases in which individual errors perhaps do not rise to the level warranting relief. Did you ask for cumulative error review in the state court? There was no state habeas, right? There was no state habeas. No state habeas. So there was just the appeal to the state Court of Appeals. Correct. And then an appeal to the state Supreme Court. Correct. So my question is, in that appeal to the Supreme Court, did you ask for cumulative error? The appeal to the Supreme Court in the Washington state court was performed by, was actually done by Mr. Tasby himself. It was a pro se petition for review in the Washington state court. Does that make a difference in terms of exhaustion? I mean, if, for example, there was a failure to exhaust, do we not apply that doctrine if he appears pro se, or does that doctrine still apply? Your Honor, I think the doctrine, because he appeared pro se, there is case law that would say that his pleading should be more liberally construed. Of course. And I think in reading his pro se document, essentially he did the best he could. He cited a number of constitutional amendments. He also had appended his state court decision. Decision, but he did not append his brief. Isn't that correct? That is correct, Your Honor. He didn't append his brief. He referred to it, and I believe that, again, liberally construing it, I think ultimately that would be considered almost asking for it to be incorporated by reference. But isn't the Supreme Court of Washington, don't they say, I'm quoting here from the Gamble case in the Supreme Court of Washington, argument incorporated by reference to other briefing is not properly before this court. So that's just a quote from there. So don't we have to follow Washington's law on exhaustion? Your Honor, certainly Washington has the right to define their proper procedures. I would agree with that. And do you differ? Do you disagree that they say that it's not, we will not consider briefing that was referred to us from other courts? That is, you have to do the briefing and argument in our court. I can't take issue with their statement of what their law is. Okay. However, under these circumstances, I think it is instructive that he did try. But secondly, if one looks at the nature of the decision that he did append, which was written by Judge Schultes in the Court of Appeals, that decision itself is approximately 15 pages, I believe. It is a fairly detailed decision in which he outlines, in which Judge Schultes first would outline Mr. Tasbee claims the following, state what it is. No, I understand that. Secondly, then would analyze it. So I think in looking at whether this was fairly presented or not, my understanding of that general doctrine is the idea that we don't want to encourage people to sort of end run exhaustion. That out of federalism and comedy, we want people to present their claims first to state court, to allow the state court to have a fair shot to resolve that claim before they come into the federal courts. And that's well understood. Just because there's a Court of Appeals brief that covers things, it doesn't mean that you're going to appeal all those things to the state's Supreme Court, does it? I mean, the lower courts often, as the appeal goes to higher and higher levels, you often winnow out less persuasive arguments. So that doesn't really tell the highest court at all whether you've winnowed out arguments or not, does it? Certainly one could winnow out arguments as one goes up. I think under the circumstances and under the way Mr. Tasby has phrased this, there's no indication that he was trying to winnow out arguments in order to eliminate things. He specifically directed them that he was appealing the Court of Appeals decision, in which, again, Judge Schultes rather methodically went through every claim. And Mr. Tasby explicitly referenced that in his brief pleading. I don't want to take up too much of your time on the procedure. I just wanted to get your answers to those questions. As far as I'm concerned, point to return to whatever your planned argument was. Understood. Thank you, Your Honor. Well, I want to pursue it for just one moment. At the beginning of his petition for review in the Washington State Supreme Court, he gives four issues, ineffective assistance to counsel, prosecutorial misconduct, rules of evidence, federal confrontation clause. He does not say cumulative error. That is to say he doesn't have five, but says all of the above taken together. Whether that means he has not properly raised cumulative error may be a different question, but it seems to me he has certainly indicated to the Supreme Court that these four categories are, he wishes to present. Cumulative error he doesn't say. Your Honor, I would agree that he doesn't reference the term cumulative error. I would also agree that, yes, he does reference those four specific claims. And the question is whether attaching the court of appeal opinion after he's said this is sufficient. Yeah. Correct. Did he argue cumulative error before the court of appeals? Your Honor, I don't believe they had specifically stated the cases that I have mentioned. They did, however, argue that, for example, the interplay between the confrontation clause and issue and I believe it was the prosecutorial misconduct issue was prejudicial. So. Did the district court talk about cumulative error? The district court did not, Your Honor. And was there argument about cumulative error to the district court? Your Honor, I can't, because this was a pro se petition, I cannot say that Mr. Tasby himself personally argued cumulative error. At what point did your office become involved in the case? Your Honor, sort of a strange procedural posture. Initially, this case came up to this court. There was actually some briefing of sorts done, and then Appellate Commissioner Shaw had taken it off the screening panel and appointed my office. So the first time your office saw this case was when it had already come to us. That's correct. With a pro se appeal. Got it. Okay. That's correct. So, essentially, what we're arguing is that it was error, in essence, by the district court not to conduct that cumulative error review. But so using the. So Sulis-Ponte, the district court should have conducted a cumulative error review since it wasn't raised? Your Honor, under the circumstances, again, I cannot say that he used the phrase cumulative error, but he does talk about having an unfair trial. And it seems to me, again, applying the rules liberally to a pro se petitioner, if somebody is arguing I have an unfair trial, all of these things happened, that to simply parse them out one by one and ignore the effect of multiple errors is simply not applying the cases we've cited correctly. Yeah. Why don't we get down to brass tacks and talk about the specific errors, and I guess we can then decide among ourselves whether we think that we get to look at them cumulatively or whether we have to look at them individually. But have a go at the particular errors that he complained of, and then we can decide later whether we look at them as a cumulative proposition. Understood, Your Honor. Essentially, the ones that I would like to talk about are two, although they have multiple parts. I think one of the more clear errors was the involvement of the prior attorney who allegedly heard this conversation that occurred about whether a person was actually a confidential informant or not. And the government decided that they were going to call this attorney to testify to this conversation that allegedly occurred between Mr. Tasby and Detective Burbridge. The attorney, Mr. Christian Phelps, had opposed, moved to quash a subpoena. And ultimately a decision or accommodation is reached where Mr. Phelps actually reads the report outside of court, confirms to the officer what the client said, and then the officer is allowed to testify to that. It's been found that's a confrontation violation. We agree. But I think... So taking it that way then, the question is whether it was harmful. Harmful, correct. And there's a lot of other evidence, quite independent of the attorney's statement introduced as hearsay, there was a lot of other evidence that he knew that she had been the informant. There was evidence of that fact, although he testified very clearly that he did not. So the idea that his prior attorney is going to essentially undercut the client, I think is a particularly prejudicial type of error. But Burbridge said that we did tell him that Ramsey was the confidential informant, right? Burbridge said that, yes. He came in. There's no out-of-court testimony there. That was in-court testimony. Burbridge, well, the confrontation issue is that Burbridge said that the attorney... I know, but in addition to that, Burbridge himself said that I told him that Tasby was the informant. Or he said to me, Tasby's the informant. He said to me... Burbridge said that the defendant said to me, Tasby was the informant, wasn't she? Ramey was. Ramey, yes. Correct. And the difference was that Burbridge was presenting it as Tasby knew who the informant was with the implication being... Right. The only point is that there was, apart from this out-of-court hearsay, which does seem to me to be improper, there was direct testimony in court about stating to him that Ramey was the informant and he... And what did Burbridge say that the defendant said in response to that? Essentially, Burbridge presents it as Tasby confirmed that Ramey was the informant because she's the one who knew. So we had... So the implication from Burbridge is that Tasby incriminated himself by knowing who the informant was. Tasby's testimony is he was told that she was the informant and simply didn't believe it. So when the attorney's testimony comes in, that strongly supports Burbridge's version. As opposed to Tasby's testimony to the contrary. So I understand. So... And we have her testimony at trial that they're basically, you know, using her things and so on. So she's intimately involved and knows exactly what's going down. And when Burbridge says, well, he tells me that, I mean, she's the only one who could have been, it's logical. That, I think, is a further evidence because we know that, in fact, that she's a likely person to have done it. I mean, I'm having trouble. I have to say, I understand your argument that it definitely increases the likelihood that the jury will find that he knew. And the state went to a great deal of trouble to introduce this evidence that was improper because the state wanted to do a belt and suspenders. I mean, the state had been entirely confident that it could have accomplished the purpose without the evidence. It wouldn't have introduced it. Correct. On the other hand, there was a lot of evidence without this stuff from the attorney. Granted, there is other evidence, but we would ask that the court look at this in terms of what's the likely effect of the incorrect evidence, not a sufficiency of the evidence outside. But I think... And what standard do we use under AEDPA to figure out how wrong the Court of Appeals has to have been to find that it was harmless? Do we owe some deference or do we get to determine harmlessness independently? Well, I think there would be AEDPA deference on that question. But I would also point out that I think in regard to the Confrontation Clause issue, we also need to look at the prosecutorial misconduct issue as far as how Mr. Tasby was questioned when he was testifying. And that's been briefed, and I want to save a little bit of time. You know, we took up a lot of your time on this question of exhaustion and cumulative error. Make your point as to prosecutorial misconduct, then we'll let the state go forward and then we'll let you rebut. Thank you. So, again, I think that what comes out, the errors that have been found in terms of prosecutorial misconduct by both the state court and the district court end up with the effect of sort of gutting more of the importance of Mr. Tasby's testimony, which, again, was a denial. So when they come to him and it goes on, and I think I would disagree with some of the courts below, it goes on for approximately four or five pages of very combative testimony by Mr. Tasby where he's constantly asked, so is this person lying? So is that person lying? So everybody's lying but you. It's improper. It's irrelevant. But it also sort of undercuts the value of his testimony in an unfair way, and I think combining that with the Confrontation Clause error had the effect of just decimating the value of Mr. Tasby's testimony. Yeah, I mean, we do have this generic idea that the prosecutor is not supposed to ask a witness, is another witness lying? And the way that has its most sort of direct and clean application is if you've got witnesses A, B, and C, all of them testifying in the same direction, is witness A asked about B and C, are they telling the truth? And they sort of mutually reinforce. That's just clearly off the table. On the other hand, what you have here, inconsistent stories. Tasby tells one story. Ramey tells another story, for example. And it's obvious that he's saying she's lying. And to ask the question, well, so she's lying, well, maybe it's technically improper, but the whole point of his testimony is that she's lying. I would agree, but I would also add that I think one of the effects that that tends to have is it creates a situation where the defendant is almost forced to disprove the prosecution's case. I think there's a potential for burden shifting there. But at this point, I'll let you go. Why don't we hear from the State and then we'll give you a chance. Thank you. May it please the Court. John Sampson, Assistant Attorney General for the State. This Court should affirm the District Court's judgment for two reasons. First, Mr. Tasby's claims are not properly exhausted and are now procedurally barred under Washington law. And second, the District Court correctly determined that state court adjudication of his claims was not unreasonable. Moving first to the issue of exhaustion, the Supreme Court has said that a petitioner must provide the state's highest court with an opportunity to review the claims before he goes to federal court. And that opportunity requires that the petitioner present the state court with both the legal basis of the claim and the factual basis of the claim. And in what respect did he fail? He gives four legal claims at the beginning. He has a narrative, as a pro se narrative, that I have to say is not a very good lawyerly piece of work. He's just kind of complaining the way a lawyer person might complain. But then he attaches the court of appeal opinion that's very carefully done, makes it very clear what the issues are. The Supreme Court in Baldwin v. Reese held that requiring a state Supreme Court to look beyond the body of petition and to read the lower court opinion does not constitute fair presentation. You know, I'm not sure that that's quite how that opinion came down. But here, he basically incorporated that opinion as part of his pro se brief. Well, Your Honor, I would disagree because what he did append the copy of the opinion, which is required under state court rules, all petitions for review are supposed to have a copy of the lower court opinion that's being reviewed. And he did say review the opinion. But Baldwin requires the petitioner to present both the specific, and also Grave v. Netherland requires the petitioner to present a specific federal guarantee that it's been violated and specific facts supporting that claim. And in Baldwin, the court noted when Reese, who was the petitioner, tried to claim that his petition, the body of the petition, did present the federal claim to the state court. The court at page 33 of the decision said that, and the petition does not even contain a factual description supporting the claim, citing Grave v. Netherland. In Baldwin, did the pro se petitioner attach a copy of the lower court opinion? I believe he did. The language of the court in holding that there was not fair presentation said that if the state court has to go beyond the body of the petition or brief and review a lower court opinion to determine the claims, that is not fair presentation. Where in Baldwin does it state that the opinion of the lower court was attached to the habeas petition? I'm not sure if it actually says that, but I believe You're talking about opportunity that the Oregon Supreme Court had to read the lower court opinion. If you can point me to a part of the passage, part of the opinion that says that lower court opinion was attached to the pro se petition as part of the petition, I'm with you. If you can't, I'm not. I can't cite that to you right now because I don't have that in front of me, but even if it was not appended, in today's world, those opinions are easily available to justices. And the Supreme Court was saying the busy role of the state Supreme Court justice, when they're looking at whether to take a case, take one of the hundred cases they'll take in a year out of the thousands of petitions that are presented to them, their review is very narrow. They're not looking to see whether that opinion was legally valid. They're looking to see, is this an issue we need to bother our time on? Yeah, you know, as I'm thinking about this as a practical matter, the role that the Washington State Supreme Court plays is a role typically of any state with a fair population. That is to say, it's not a mandatory review. In the state system, they've got equivalent to what the United States Supreme Court does, discretionary review for questions of policy. They don't really regard themselves, for the most part, as courts of correction of error. And I would think that this gives the Supreme Court a fair notion. Is there some issue in here that we think is sufficiently important for our attention so that we need to sort of redirect the law a little bit, clarify and so on? I don't know what else the state Supreme Court needed to decide whether or not to exercise discretionary review. They knew exactly what the legal issues were because he specified them, and all they had to do was read the opinion that was appended, which wasn't very long and was very well written. I think they much would have preferred to read the typewritten opinion to figure out what's at issue than a long, prolix, handwritten lay piece to try to explain those same legal issues. Well, Your Honor, if you look at the facts that were presented in the body of the petition, those facts all deal with the actual crime and the events leading to the arrest. In terms of what he wrote? In terms of what he wrote. Yeah, which reinforces my point. If I'm on the Washington Supreme Court, I'd much rather read the Court of Appeal opinion to know what's at issue than to read what he writes because what he writes is, well, it's what you get on a prosaic petition. Right. But the claims didn't deal with the facts of the crime or the events leading to his arrest. The claims dealt with events that occurred at trial, improper questioning by the prosecutor, improper comments during closing argument. As fully explained and dealt with by the opinion that was appended. Yes, Your Honor, and I can see we're somewhat butting heads here on this issue. So you may persuade my colleagues. You might be able to persuade me on the merits. Yes, Your Honor. So I will move to the merits then, and then if I have any time left, I'll come back to procedural default. So addressing the merits, the primary claim Mr. Tasby has argued is the confrontation claim. And what happened there, as the Court is aware, the detective improperly testified that his former counsel confirmed that the report was accurate. The State Court of Appeals reasonably determined that that was a violation of Crawford, it was testimonial, but they also found that it was harmless. And the reason it was harmless is in addition to the fact that Detective Burdridge testified that Mr. Tasby made these statements and then Mr. Tasby refuted that and said, no, I didn't. The State Court of Appeals correctly determined this was really a collateral issue. This was impeachment on a collateral issue. It was limited solely to whether Tasby knew Ms. Ramsey was a confidential informant. And that really was only important to one of the convictions, which would be the intimidation of a witness. But that doesn't sound like it's a collateral issue. It sounds like it's directly an issue on one of the counts. It's collateral to the extent that it was evidence being offered to rebut Mr. Tasby's denial of what Detective Burdridge said. So it wasn't really what we would consider the direct testimony. It was being brought in as rebuttal to Mr. Tasby's statement. Well, instead of collateral, would it be cumulative? Did the statements attributed to previous attorney Phelps add anything to the testimony at trial by Burdridge? Yes, Your Honor. And the State Court found that it was also cumulative in that matter. I mean, yes, it did add something, or no, it didn't, and therefore it was cumulative.  Because Burdridge said, I told Tasby, Tasby said that he thought that his girlfriend, Ramey, was the informant, and so this was Phelps then giving cumulative testimony. Yes, the statement by Mr. Phelps was cumulative in that.  I mean, he, of course, didn't testify, but I mean, a clearly improper reference to Phelps. I mean, I don't think anybody is really trying to defend that as a proper position. No, I agree. I agree. But the issue really was, did Tasby know or not know that she was a confidential informant? He knew that her name was out there. He knew that Detective Burdridge had relied on her testimony because she was the only one who would really have this information. It was only her, Mr. Lazine, and Mr. Tasby who were together when they watched the TV report of the robbery and when they scratched off the lottery ticket. So it was only her that would have this information. So he knew it. It was cumulative. It was a collateral issue. It wasn't, when you look at the entirety of the trial, it did. Well, let me ask you this, though. I mean, given the layers of deference that were required to give to the State Court determination of harmlessness, I'm inclined to agree with you that even though improper, this was harmless. So this is a separate question. I don't know how much supervisory authority, either direct or hortatory, your office has, but no prosecutor should have done that. I mean, it's just hornbook law that this was improper, and the only reason it was done was that the prosecutor wanted to gild the lily, that the prosecutor wanted the cumulative evidence because the prosecutor, I'm now reading the mind of the prosecutor, but I'm pretty sure this was going on, he wanted to make darn sure that the jury convicted instead of pretty sure. I regard that as despicable behavior. It may be that you get to keep this guy in jail, but that prosecutor should be ashamed of himself. And I agree, Your Honor, that it's clear error. It should have not occurred. I would have not. I have to say as well as to the judge. Yes, Your Honor. Yes, Your Honor. It's clear Crawford prohibits it because it is testimonial evidence being offered to prove the truth of the matter, and it was being made to a police detective for the purposes of admission at trial. I agree that it was. And the only reason it was admitted at trial was because the prosecutor thought it would help the case. Yes, Your Honor. And all too often prosecutors do sometimes do more than they need to. Overzealous a little bit. A little overzealous sometimes. Yes, Your Honor. It happens. This is not the first time we've seen such a thing. Yes, Your Honor. Exactly. Exactly. But, again, where we are now, the standards is was the state court adjudication objectively unreasonable, and I submit it was not. As to the prosecutor misconduct, I'd just like to clarify that the claim regarding the improper cross-examination, Mr. Tasby, regarding were witnesses lying, there was really only one question as to was the person lying. All the other questions were were they mistaken. There's a fine distinction between the two, but it still is a distinction. You're simply asking were they mistaken when they said this occurred. Mr. Tasby always said yes, they were mistaken. So there's really no prejudice arising from that. And then the question about was Ms. Ramsey lying, there was actually an objection. Mr. Tasby said something about it's in your report, but he never really answered the question was she lying or not, and they moved on from that. So the state court reasonably determined this was not so unfairly prejudicial that it rendered the entire trial unfair so as to violate due process. And then if I can move back to the procedural bar, unless the court has questions on the remaining merits, I would just again say that Baldwin, to me, is clear that it requires a court to look solely at the petition that is presented to the court. And in this case, there were no specific facts regarding the claims, all claims involving error at trial. The facts were all prior to that. And there was no specific legal argument. A claim of ineffective assistance of counsel, that can mean numerous errors by counsel. It could be failure to investigate. It could be failure to present a defense. It could be failure to object to a jury instruction. Just simply saying ineffective assistance of counsel is not enough to present a specific claim. The same with prosecutor misconduct. It could be failure to disclose evidence. It could be improper argument to the jury. It could be ‑‑ And I think IAC, actually, was not presented to the court of appeal. So I think that was not adjusted, even if you ‑‑ even on my sort of sympathetic reading of the petition to the Washington Supreme Court. Yes, Your Honor. And then, finally, as to the accumulative error issue, the only place I found that raised in state court was at supplemental excerpts of Record 38. In the conclusion to the Washington Court of Appeals brief, Mr. Tasbee's counsel argued that the constitutional violations separately and collectively violated his rights. There was no cumulative error claim presented to the district court that I'm aware of. Where was that? That was in the court of appeals briefing? In the ‑‑ In the Washington Court of Appeals that you're referring to? Yes, Your Honor. In the very conclusion, just the last Roman numeral paragraph where it says, basically reverse my conviction, it said separately and collectively. That's the closest we get to a claim. So, arguably, cumulative error was raised to the state court. But you say there was no argument anywhere in the federal district court? That's correct, Your Honor. And it was never presented as a separate claim that we often see in federal habeas where it's presented as a separate claim that this is cumulative error. And it was never argued to the state supreme court. There's no ‑‑ even if the court were to consider the opinion as sufficient, there's nothing in there that I see regarding cumulative error. So that claim was not presented to the state supreme court. So I would ask that the court affirm the district court judgment. Thank you. Thank you. Mr. Campbell? Thank you, Your Honor, and I will keep it brief. And I really would just want to talk about the merits of the two issues. The Phelps testimony, I would completely disagree that this was a collateral issue. It went to motive. It went to motive for witness intimidation. It went to motive for kidnapping. That was the purpose. I don't see how motive can be considered a collateral issue. I would also strongly disagree with the idea that it was cumulative. There was a dispute between two witnesses, Detective Burbridge and my client, Mr. Tadsby. This testimony was deliberately elicited to fix that dispute and to say Detective Burbridge is correct. So simply to say that Mr. Phelps' testimony was similar to that or even identical to that of Burbridge doesn't make it either collateral or cumulative. That's why they introduced it. Mr. Cipolla wanted to make it clear that his witness was right and the defense witness was wrong. So I don't see how this can be considered cumulative. It might be a different case had Detective Burbridge gotten up and testified and then there was no defense evidence. Then maybe it would be cumulative because those facts weren't disputed. But Mr. Tadsby disputed those facts through his testimony. That's why this testimony was introduced. So it can't be cumulative. It can't be collateral. It was, as Judge Fletcher has mentioned, the prosecutor knew what he was doing, did it for a reason, did it for an important reason, to establish motive, something that we all know is of critical importance in a case like this. Counsel, do you agree that the ineffective assistance of counsel claim was not exhausted? I'm hesitant to agree, but I can't. Then tell us how it was exhausted. I will say I cannot point to a portion of the direct appeal in the state court where ineffective assistance is argued. In regard to the prosecutorial misconduct issues, again, I think the state is, I don't want to say mischaracterizing, but is really lessening the effect of that. If we read those pages, and it goes on for six or seven pages of testimony, the clear tenor of those pages is accusatory and it's saying to Mr. Tasbee, you're lying, aren't you, and we all know that. And it's particularly, I would say, unprofessional where, you know, at ER 321, the prosecutor says, I know you know what you said. I think we've got it. You're over time, so if you want to wind up, that would be great. Fine, I will do that. And at 326, it says, I don't trust you either. These are things that no prosecutor should say, did it for a reason, and undermined the most important defense testimony. And we'd ask for a reversal. Okay, thank both sides for their arguments. Tasbee v. Frakes now submitted for decision.
judges: Ebel, Fletcher, Rawlinson